OPINION OF THE COURT
Per Curiam.
Order entered October 23, 2003 reversed, with $10 costs, plaintiffs motion to restore the action to the trial calendar is denied and the complaint dismissed.
Plaintiff commenced the within medical malpractice action in Supreme Court in 1996, concerning events alleged to have occurred in 1993. The record indicates, and it is not seriously disputed, that a note of issue was served and filed in or around February 1997; that the case was transferred to Civil Court pursuant to CPLR 325 (d) on June 15, 2000, when plaintiffs counsel was unable to proceed on the “final” adjourned Supreme Court trial date; and that on July 9, 2001, following motion practice involving plaintiffs failure to undergo an independent medical examination, the case was marked off the Civil Court trial calendar on defendants’ consent, with a notation on the court file indicating “restore on stip . . . [defendant] needs echocardiagram.” In August 2003, without yet providing the contemplated medical exchange,* plaintiff moved to restore the action to the trial calendar.
When an action has been marked off the trial calendar and not restored within one year, a plaintiff seeking restoral must demonstrate a meritorious cause of action, a reasonable excuse for the delay in seeking to restore the action, the absence of prejudice to the opposing parties, and a lack of intent to abandon the action (see 22 NYCRR 208.14 [c]; Williams v A&S Dept. Store, 5 Misc 3d 140[A], 2004 NY Slip Op 51665[U] [App Term, 1st Dept 2004]; Mester v Cattani, 4 Misc 3d 132[A], 2004 NY Slip Op 50714[U] [App Term, 2d Dept 2004]; see also CPLR 3404). Each criterion must be satisfied for restoral to be granted after expiration of the one-year period (see Katz v Robinson Silverman Pearce Aronsohn & Berman, 277 AD2d 70, 74 [2000]), and this is so whether the case was marked off on consent (see e.g. Goldstein v Block, 7 AD3d 669 [2004]; Gray v Cuttita, 281 AD2d 785 [2001]; Williams Corp. v Roma Fragrances & Cosmetics, 166 AD2d 327 [1990]) or whether the parties agreed that *62 restoral would be unopposed (see Bergan v Home for Incurables, 124 AD2d 517 [1986]).
In this case, plaintiff failed to make the requisite showing as to three of the four requirements. First and foremost, the unsigned and redacted affirmation submitted by plaintiffs medical expert, even if considered' (see Fuller v Tae Kwon, 259 AD2d 662 [1999]), was insufficient to demonstrate merit.
“In an action to recover damages for medical malpractice, the affidavit of merit [accompanying a motion to restore] must be by a physician or other qualified expert, and must state with specificity the expert’s observations as to procedures or treatments performed and the alleged deviations from acceptable standards of medical care” (Yousian v New York Med. Ctr. Hosp. of Queens, 277 AD2d 449 [2000]).
The physician’s affirmation supplied by plaintiff was vague and conclusory, failing to allege with requisite specificity the acts or omissions allegedly constituting malpractice or the causal relation between defendants’ unparticularized medical improprieties and plaintiffs injuries (see Jackson v Bronx Lebanon Hosp. Ctr., 7 AD3d 356 [2004]; Nepomniaschi v Goldstein, 182 AD2d 743, 744 [1992]; Barton v Jablon, 181 AD2d 755, 756 [1992]; Bergan v Home for Incurables, 124 AD2d at 519). Inadequate in this regard were plaintiff’s expert’s unamplified assertions that defendants collectively failed to “properly examine” plaintiff or to “utilize proper surgical technique” in connection with the underlying hernia repair surgery — blunderbuss allegations of malpractice which provide no hint, much less evidentiary detail, as to any specific, identifiable professional departure(s).
“As has been elsewhere observed (Sortino v Fisher, [20 AD2d 25], at pp 28, 31-32), there is an intimate relation between an action’s merit and the fact of its neglect. Where, as here, a long-pending action is not . . . shown to be meritorious, the inference is very strong that it has been neglected for its meager promise.” (Bergan v Home for Incurables, 124 AD2d at 519.)
For her “reasonable excuse,” plaintiffs counsel points to a variety of factors, including a claimed “oversight” in “preserving]” the diary entry of the July 9, 2001 mark-off date, the illness of the office secretary “who would follow such matters,” “personnel changes” resulting from the secretary’s illness, and counsel’s stated, but unfounded belief that the restoral motion need not be made within one year in view of the court’s (cryptic) *63 calendar notation that the case would be “restore[d] on stip.” Notably absent from plaintiffs counsel’s supporting affirmation is any explanation of the nature or circumstances of the claimed “diary” error — how it occurred or who was responsible — or any indication that the “personnel changes” said to have contributed to counsel’s failure to properly keep track of plaintiff’s case caused similar confusion in other pending matters. On balance, counsel’s bare and seemingly contradictory assertions — coupling a vaguely described species of law office failure with counsel’s professed misapprehension of the law — were insufficient to justify the substantial (25-month) delay in moving to restore the action to the trial calendar (see Habib v Miller, 233 AD2d 480 [1996]; Civello v Grossman, 192 AD2d 636 [1993]; cf. Estevez v Coleman, 15 AD3d 226 [2005]). It bears emphasis that during the protracted history of this litigation, plaintiff progressed no further than having her case marked “ON” and “OFF” several calendars, and that this pattern of delay is relevant in determining whether plaintiff demonstrated a reasonable excuse (see Campos v New York City Health & Hosps. Corp., 307 AD2d 785, 786 [2003]).
Finally, plaintiff did not adequately counter the defendants’ showing that their ability to defend the action has been impaired by the death or unavailability of several material witnesses, nor did plaintiff otherwise disprove that defendants were prejudiced by the delay. In these circumstances, where nearly a decade had elapsed between the occurrence of the alleged malpractice and the filing of plaintiffs motion to restore, the likelihood of prejudice is apparent since “[m]emories of [surviving] witnesses fade with the substantial passage of time and may not be reliable” (Krantz v Scholtz, 201 AD2d 784, 785 [1994], lv dismissed 83 NY2d 902 [1994]; see Rodriguez v Middle Atl. Auto Leasing, 122 AD2d 720, 723 [1986], appeal dismissed 69 NY2d 874 [1987]; see also Carter v City of New York, 231 AD2d 485 [1996]; Civello v Grossman, 192 AD2d at 636).

 Although defense counsel wrote to plaintiffs attorney in January 2002 inquiring as to the status of the echocardiagram, plaintiff did not produce an echocardiagraphy report until September 25, 2003, more than 21 months later and roughly six weeks after filing her restoral motion.